# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00514-CR

**Curtis Jerrells, Appellant**

**v.**

**The State of Texas, Appellee**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 427TH JUDICIAL DISTRICT
NO. D-1-DC-06-300822, HONORABLE DONALD LEONARD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Curtis Jerrells of indecency with a child by exposure, enhanced by two prior convictions, and sentenced him to twenty years in prison plus a $10,000 fine.

The jury heard testimony from V.W., who identified Jerrells in court and stated that he was among the guests who attended a gathering at her brother's house. V.W. recalled that most of the adults were in the backyard while the children were playing inside. V.W. stayed inside to use the computer in her nephew's room, but she went to the living room to check on the girls after she heard them laughing and screaming. There she saw Jerrells playing with D.W., a girl who played with V.W.'s niece and lived nearby. V.W. said that what caught her attention was that Jerrells was pulling D.W. upstairs. She was concerned about a grown man, who had never been to her brother's house, playing with someone else's kids, and she wondered why he was playing with the youngest child in the house. She testified that she told Jerrells to go outside, asked D.W. whether she knew

him, and when D.W. responded that she did not, V.W. told her not to play with someone that she did not know. V.W. returned to the computer for a little while, but then left the house to meet a friend.

The jury also heard testimony from V.W.'s sister-in-law, T.W. When T.W. went inside the house, D.S. told T.W. that Jerrells was "messing with her, [D.S.], that he was trying to put his thing in her [D.S.'s] pee-pee." T.W. testified that when she asked D.S. who had done that, D.S. said the "boy with the gold chain." T.W. knew who D.S. was identifying because Jerrells "was the only one that had a gold chain on that night."

D.S., who was ten years old at the time of trial, testified that when she was five or six years old and playing hide-and-seek with children inside the house, Jerrells found her in a bedroom, shut the door, unzipped his zipper and exposed his "middle spot," which she identified on a doll before the jury.

D.S.'s friends, A.W. and S.R., testified as witnesses to the incident in the bedroom. A.W., who was thirteen at the time of trial, testified that she went to look for D.S. and found her in a bedroom with Jerrells, who had his penis exposed. S.R., who was almost fourteen at the time of trial, testified that D.S. was taking a long time to count when they were playing hide-and-seek, so S.R. and A.W. left the room where they were and went in the room where S.R. saw Jerrells with his "private" exposed. S.R. testified that she reported what she had seen to her mother, T.W.

Kim Sanchez, an emergency room pediatric nurse at Dell Children's Hospital, testified that she examined D.S. and that there appeared to be no trauma. Sanchez noted that an unremarkable examination could be consistent with sexual abuse; however, she also agreed that no trauma visualized can mean that no trauma or sexual abuse occurred.

2

Austin Police Officer Christopher Eveleth testified that he was a patrol officer dispatched to the residence where the incident occurred on a 911 call of indecency with a child. He was the first officer on the scene, and once there he spoke with T.W., completed a report, and called Detective Catherine Johnson, the on-call detective for child abuse cases. Eveleth explained that he did not speak with D.S. because of a policy in such cases requiring children to be interviewed by a child psychologist.

Corporal Billy Hurst of the Austin Police Department testified that he was dispatched to the residence and was the second officer to arrive at the scene. He had brief conversations with some people but did not conduct any interviews. Hurst stated that his primary responsibility was to maintain security by separating the suspect from the victim or witnesses so that the other officer could conduct his interviews.

Sergeant Catherine Johnson, who was a child abuse detective with the Austin Police Department, testified that Officer Eveleth notified her about D.S.'s outcry of abuse. Johnson advised Eveleth to gather as much information as possible but she also acknowledged that there is not normally physical evidence on the child when there is an allegation of indecency by exposure. At the conclusion of Johnson's testimony, the parties presented the jury with two stipulations: first, that D.S. was never married to or the spouse of Jerrells; and second, that Jerrells's DNA was detected on the fingernail scrapings taken from D.S.

The State's final witness was William Lee Carter, a psychologist who specializes in sexual abuse cases. Carter testified that when considering an outcry, the child's age is significant because it is often difficult for young children, who lack the communication skills of adults, to state

exactly what happened. Carter also stated that, unlike in divorce or child-custody contexts, usually the child has nothing to gain or lose by making a statement that a complete stranger has sexually assaulted or abused them. After presentation of the State's witnesses, both sides rested.

Jerrells's appointed attorney filed a motion to withdraw supported by a brief concluding that this appeal does not present any reversible error or jurisdictional defects and is without merit. Counsel's brief meets the requirements of *Anders v. California*, 386 U.S. 738 (1967), by presenting a professional evaluation of the record and demonstrating that there are no arguable grounds to be advanced. *See Penson v. Ohio*, 488 U.S. 75, 80 (1988); *Anders*, 386 U.S. at 743-44; *High v. State*, 573 S.W.2d 807, 811-13 (Tex. Crim. App. 1978); *Currie v. State*, 516 S.W.2d 684, 684 (Tex. Crim. App. 1974); *Gainous v. State*, 436 S.W.2d 137, 138 (Tex. Crim. App. 1969). Jerrells's attorney sent Jerrells a copy of the brief and advised him that he had the right to examine the record and file a pro se brief. *See Anders*, 386 U.S. at 744; *Jackson v. State*, 485 S.W.2d 553, 553 (Tex. Crim. App. 1972).

Jerrells filed his pro se brief. We will briefly explain why his contentions lack arguable merit. *See Garner v. State*, 300 S.W.3d 763, 767 (Tex. Crim. App. 2009); *Bledsoe v. State*, 178 S.W.3d 824, 826-27 (Tex. Crim. App. 2005).

Jerrells contends that the evidence presented at trial was factually insufficient to support the jury's verdict. However, we no longer apply a factual sufficiency standard. When there is a challenge to the sufficiency of the evidence, the only question presented is whether, after viewing all the evidence in the light most favorable to the verdict, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319

4

(1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Jerrells's challenge to the sufficiency of the evidence is based on his contention that the State's witnesses gave conflicting and unreliable testimony. The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319. Thus, Jerrells's contention lacks arguable merit because it fails to view the evidence in the light most favorable to the jury's verdict.

Jerrells next contends that he received ineffective assistance from his trial counsel because counsel "failed to adequately investigate the case," was "not familiar with the alleged crime scene [residence]," and "wanted to assist the prosecutor" and violated Jerrells's privilege against self-incrimination by joining in the State's request for Y-STR testing of Jerrells's DNA. To prevail on a claim of ineffective assistance of counsel, a defendant must prove by a preponderance of the evidence that: (1) counsel's performance "fell below an objective standard of reasonableness" and (2) counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). The second prong of the *Strickland* test is generally met by showing there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 692. Here, Jerrells's claim that defense counsel failed to interview any of the State's witnesses lacks arguable merit because it is based on assertions of fact that are outside the record and because Jerrells does not state what the investigation or interviews would have revealed that reasonably could have changed the result of this case. Further, Jerrells's complaint that counsel failed to adequately investigate the case is belied by the record, which shows that both of Jerrells's defense attorneys were prepared for trial, raised

5

objections, and conducted cross-examinations demonstrating their knowledge of the issues to be addressed with each witness. With regard to Jerrells's remaining ineffective-assistance complaints, the record shows that defense counsel's questioning about the residence may have been part of a strategy to challenge witness accounts of events given the layout of the house and that defense counsel joined in the State's request for DNA testing because "testing will result in a negative finding and therefore would be exculpatory." Based on this record, Jerrells's contention that he received ineffective assistance of counsel does not meet the *Strickland* test and lacks arguable merit.

Jerrells further contends that he was not provided with "potentially exculpatory information" in the State's possession, based on "DNA testing results that Detective Johnson did not know about" and a "prior inconsistent statement from [S.R.]" This contention lacks arguable merit because the DNA testing that Jerrells references was the subject of the parties' stipulation and because Jerrells does not reference anything in the record suggesting that an exculpatory statement from S.R. exists, and we find none.

Jerrells also contends that there was no probable cause for his arrest. This contention lacks arguable merit because the affidavit for warrant of arrest in the record shows that Sergeant Johnson relied on information from the police officers' investigation of D.S.'s outcry—including witness statements from A.W., an eyewitness to Jerrells's offense, and T.W., the adult to whom D.S. first made her outcry—which provided probable cause and justified Jerrells's arrest.

Having considered the record, counsel's brief, and appellant's pro se brief, we agree with counsel that the appeal does not present any reversible error or jurisdictional defects and is without merit. *See Garner*, 300 S.W.3d at 766; *Bledsoe*, 178 S.W.3d at 826-27. We have reviewed

6

the evidence presented to the jury at trial and the procedures that were observed and find nothing in the record that might arguably support the appeal. We conclude that the appeal is frivolous, grant counsel's motion to withdraw, and affirm the judgment of conviction.

_____

Jeff Rose, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed: August 19, 2011

Do Not Publish